**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**BEAUMONT DIVISION**

| | | |
|---|---|---|
| **NEW YORK MARINE AND GENERAL INSURANCE COMPANY,** | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| **vs.** | § | **CIVIL ACTION NO.** 1:26-cv-399 |
| | § | |
| **NECHES TRANSPORT, INC., DEONDRIC CHEVON MALVEAUX, and MICHAEL LYNN MARINO** | § | |
| | § | |
| *Defendants.* | § | |

**COMPLAINT FOR DECLARATORY JUDGMENT**

Plaintiff, New York Marine and General Insurance Company ("New York Marine"), files this Complaint for Declaratory Judgment pursuant to Federal Rule of Civil Procedure 57 and 28 U.S.C. § 2201, seeking a declaratory judgment and other relief summarized below.

## I. PARTIES

1. Plaintiff, New York Marine and General Insurance Company ("New York Marine"), is incorporated in the State of New York with its principal place of business in Morristown, New Jersey. New York Marine is a citizen of the States of New York and New Jersey.

2. Defendant, Neches Transport, Inc. ("Neches") is a Texas corporation with its principal place of business in Spurger, Texas. Neches can be served with citation through its registered agent, Stuart C. Yoes, at 1855 Calder Street, 2nd Floor, Beaumont, Texas 77701. Neches is a citizen of the State of Texas.

3. Defendant, Deondric Chevon Malveaux, is a resident of Tyler County Texas who may be served at 110 PV 8545 Lot #1, Spurger, Texas 77660 or wherever he may be found. Mr. Malveaux is a citizen of the State of Texas.

4. Defendant, Michael Lynn Marino, is a resident of Tyler County, Texas and may be served at 4777 E FM 256 Colmesneil, Texas 75938 or wherever he may be found. Mr. Marino is a citizen of the State of Texas.

## II. JURISDICTION AND VENUE

5. This court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332(a), because the matter in controversy of this civil action exceeds the value of $75,000, exclusive of interest and costs, and is between citizens of different States. New York Marine (a citizen of New York and New Jersey) does not share citizenship with any one of the named defendants. More particularly, New York Marine seeks non-monetary relief in the form of a declaratory judgment regarding whether there is any duty to defend or indemnify Neches or Mr. Malveaux in connection with a state court lawsuit brought against them by Mr. Marino.

6. Jurisdiction of this declaratory judgment action is further appropriate pursuant to 28 U.S.C. § 2201. An actual controversy exists between the parties having adverse legal interests to warrant the issuance of a declaratory judgment by this Honorable Court. The action is not hypothetical in nature, but rather would resolve the dispute between the parties.

7. Venue is proper in the judicial district for the Eastern District of Texas under 28 U.S.C. § 1391(b) because a substantial part of the events giving rise to the claim occurred in Tyler County, Texas, which is located in this judicial district.

## III. SUMMARY OF ACTION

8. This is an insurance coverage dispute arising out of an underlying state court lawsuit, Cause No. 27692, styled, *Michael Lynn Marino v. Deondric Chevon Malveaux and Neches Transport, Inc.*, pending in the District Court of Tyler County, Texas (the "State Court Lawsuit"). The State Court Lawsuit arose out of a truck wreck that occurred on September 18,

2025 between a vehicle driven by Mr. Marino, the Plaintiff in the State Court Lawsuit, and a tractor trailer operated by Mr. Malveaux on behalf of Neches, who are both Defendants in the State Court Lawsuit.

9. New York Marine issued Commercial Liability Umbrella Policy No. UM202500010822 (the "Umbrella Policy") on which Neches is the named insured. The Umbrella policy has an each occurrence limit of $2,000,000 per occurrence and in the aggregate and affords coverage for the policy period from March 17, 2025 to March 17, 2026. The coverage afforded by the Umbrella Policy applies excess of "underlying insurance," which under the terms of the Umbrella Policy is defined as "any policies of insurance listed in the Declarations under the Schedule of 'underlying insurance.'" The Schedule of "underlying insurance" in the Declarations lists Employer's Liability Policy No. 0002048499 (the "WC/EL Policy") issued by Texas Mutual Workers' Compensation Insurance ("Texas Mutual"), the General Liability Coverage Part (the "CGL Coverage Part") and Employee Benefits Liability Coverage Part (the "EBL Coverage Part") included in Package Policy No. PK202500025327 issued to Neches by New York Marine (the "Package Policy").

10. New York Marine is defending Neches and Mr. Malveaux in the State Court Lawsuit under Auto Liability Policy No. AU202500018813 (the "Auto Liability Policy"). However, the Auto Liability Policy is not "underlying insurance" under the Umbrella Policy.

11. Mr. Marino made a settlement demand in excess of the limits of the Auto Liability Policy. Neches has therefore sought coverage for the State Court Lawsuit under the Umbrella Policy and to tender its self-insured retention of $10,000 required by the Umbrella Policy where there is no coverage under the "underlying insurance." (Ex. A., Declarations, p. 25; Definition of "self-insured retention," p. 43). Neches' offer to satisfy the self-insured retention does not create

coverage under the Umbrella Policy where coverage is otherwise precluded by the policy's terms, including the Auto Coverages exclusion. In this declaratory judgment lawsuit, New York Marine seeks declarations that it does not owe a defense or indemnity to Neches or Mr. Malveaux under the Umbrella Policy. (Ex. A., Exclusions, p. 28, f. Auto Coverages, p. 29). New York Marine seeks declarations that it owes no duty to indemnify Neches or Mr. Malveaux under the Umbrella Policy pursuant to the exception announced in *Farmers Texas County Mutual Insurance Company v. Griffin,* 955 S.W.2d 81 (Tex. 1997), holding that the duty to indemnify is justiciable prior to entry of judgment if there is no duty to defend and there could be no duty to indemnify for the same reasons.

## IV. CONDITIONS PRECEDENT

12. All conditions precedent to the filing of this suit have been performed or have occurred.

## V. FACTUAL BACKGROUND

### A. The Umbrella Policy

13. New York Marine issued Commercial Liability Umbrella Policy No. UM202500010822 (the "Umbrella Policy") to first named insured Neches Transport, Inc. ("Neches") for the policy period from March 17, 2025 to March 17, 2026. A certified copy of the Umbrella Policy is attached to this Complaint as Exhibit A and is incorporated herein by reference.

14. The Umbrella Policy affords coverage in excess of "underlying insurance" which is defined as policies listed in the Declarations on the Schedule of Underlying Insurance. (Ex. A, p. 44). The Schedule of Underlying Insurance in the Declarations lists Employer's Liability Policy No. 0002048499 (the "WC/EL Policy") issued by Texas Mutual Workers' Compensation Insurance ("Texas Mutual"), the General Liability Coverage Part of Package Policy No. PK202500025327

and the Employee Benefits Coverage part of Package Policy (No. PK202500025327) issued by New York Marine as "underlying insurance." (Ex. A., Schedule of Underlying Insurance, p. 26). No other insurance policies are included within the definition of "underlying insurance."

15. The Umbrella Policy contains an insuring agreement that reads, in pertinent part, as follows:

> **SECTION I – COVERAGES**
>
> **COVERAGE A – BODILY INJURY AND PROPERTY DAMAGE LIABILITY**
>
> 1. Insuring Agreement
>
>    a. We will pay on behalf of the insured the "ultimate net loss" in excess of the "retained limit" because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking damages for such "bodily injury" or "property damage" when the "underlying insurance" does not provide coverage or the limits of "underlying insurance" have been exhausted. When we have no duty to defend, we will have the right to defend, or participate in the defense of, the insured against any other "suit" seeking damages to which this insurance may apply. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damages" to which this insurance does not apply. At our discretion, we may investigate any "occurrence" that may involve this insurance and settle any resultant claim or "suit" for which we have the duty to defend. But:
>
>       (1) The amount we will pay for the "ultimate net loss" is limited as described in Section III – Limits of Insurance; and
>
> * * *
>
>    b. This insurance applies to "bodily injury" or "property damage" that is subject to an applicable "retained limit". If any other limit such as a sublimit, is specified in the "underlying insurance", this insurance does not apply to "bodily injury" or "property damage" arising out of that exposure unless that limit is specified in the Declarations under the Schedule of "underlying insurance."
>
> * * *

(Ex. A. p. 27).

16. The Umbrella Policy contains the following applicable exclusion:

> **2. Exclusions**

This insurance does not apply to:

* * *

**f. Auto Coverages**

(1) "Bodily injury" or "property damage" arising out of the ownership, maintenance or use of any "auto" which is not a "covered auto"; or

(2) Any loss, cost or expense payable under or resulting from any first-party physical damage coverage; no-fault law; personal injury protection or auto medical payments coverage; or uninsured or underinsured motorist law.

* * *

(Ex. A. p. 29).

17. The Umbrella Policy contains the following Who is an Insured provision:

**SECTION II – WHO IS AN INSURED**

**1.** Except for liability arising out of the ownership, maintenance, or use of "covered autos":

**a.** If you are designated in the Declarations as:

* * *

**(4)** An organization other than a partnership, joint venture or limited liability company, you are an insured. Your "executive officers" and directors are insureds, but only with respect to their duties as your officers or directors. Your stockholders are also insureds, but only with respect to their liability as stockholders.

* * *

**b.** Each of the following is also an insured:

**(1)** Your "volunteer workers" only while performing duties related to the conduct of your business, or your "employees", other than either your "executive officers" (if you are an organization other than a partnership, joint venture or limited liability company) or your managers (if you are a limited liability company), but only for acts within the scope of their employment by you or while performing duties related to the conduct of your business….

* * *

(Ex. A. p. 36).

18. The Umbrella Policy contains the following relevant Conditions:

**SECTION IV – CONDITIONS**

* * *

**11. Loss Payable**

Liability under this Coverage Part does not apply to a given claim unless and until:

**a.** The insured or insured's "underlying insurer" has become obligated to pay the "retained limit"; and

* * *

(Ex. A. p. 40).

19. The Umbrella Policy contains the following relevant definitions:

**SECTION V – DEFINITIONS**

* * *

**2.** "Auto" means:

**a.** A land motor vehicle, trailer or semitrailer designed for travel on public roads, including any attached machinery or equipment; or

**b.** Any other land vehicle that is subject to a compulsory or financial responsibility law or other motor vehicle insurance law where it is licensed or principally garaged.

* * *

**5.** "Covered Auto" means only those "autos" to which "underlying insurance" applies.

* * *

**19.** "Retained Limit" means the available limits of "underlying insurance" scheduled in the Declarations or the "self-insured retention", whichever applies.

**20.** "Self-insured retention" means the dollar amount listed in the Declarations that will be paid by the insured before this insurance becomes applicable only with respect to "occurrences" or offenses not covered by the "underlying insurance". The "self-insured retention" does not apply to "occurrences" or offenses which would have been covered by "underlying insurance" but for the exhaustion of applicable limits.

* * *

> **23.** "Ultimate net loss" means the total sum, after reduction for recoveries or salvages collectible, that the insured becomes legally obligated to pay as damages by reason of settlement or judgments or any arbitration or other alternate dispute method entered into with our consent or the "underlying insurer's" consent.
>
> **24.** "Underlying insurance" means any policies of insurance listed in the Declarations under the Schedule of "underlying insurance."
>
> **25.** "Underlying Insurer" means any insurer who provides any policy of insurance listed in the Schedule of "Underlying insurance."

* * *

(Ex. A. pp. 41-44).

20. Finally, the Umbrella Policy contains the following Schedule of Underlying Insurance:

| Schedule Of Underlying Insurance | | | |
|---|---|---|---|
| Employer's Liability | **Company:** | Texas Mutual Workers' Compensation Insurance | |
| | **Policy Number:** | 0002048499 | |
| | **Policy Period:** | 06-07-2024 to 06-07-2025 and renewals thereof | |
| | **Limits Of Insurance:** | | |
| | **Bodily Injury By Accident Each Accident** | $ 1,000,000 | |
| | **Bodily Injury By Disease Policy Limit** | $ 1,000,000 | |
| | **Bodily Injury By Disease Each Employee** | $ 1,000,000 | |
| General Liability | **Type Of Coverage:** | ☑ **Occurrence** | ☐ **Claims-made** |
| | **Retroactive Date (Claims-made Coverage):** | | |
| | **Company:** | New York Marine & General Insurance Company | |
| | **Policy Number:** | PK202500025327 | |
| | **Policy Period:** | 03-17-2025 to 03-17-2026 and renewals thereof | |
| | **Limits Of Insurance:** | | |
| | **Each Occurrence** | $ 1,000,000 | |
| | **Personal And Advertising Injury** | $ 1,000,000 | Any one person or organization |
| | **Products-Completed Operations Aggregate** | $ 2,000,000 | |
| | **General Aggregate** | $ 2,000,000 | |
| | **Damage To Premises Rented To You** | $ Not Scheduled | |
| | **UGRE Aggregate Limit** | $ 1,000,000 | |
| Employee Benefits Liability | **Type Of Coverage:** | ☐ **Occurrence** | ☑ **Claims-made** |
| | **Retroactive Date (Claims-made Coverage):** 03-17-2022 | | |
| | **Company:** | New York Marine & General Insurance Company | |
| | **Policy Number:** | PK202500025327 | |
| | **Policy Period:** | 03-17-2025 to 03-17-2026 and renewals thereof | |
| | **Limits Of Insurance:** | $ 1,000,000 | Each Employee |
| | | $ 1,000,000 | Aggregate |

(Ex. A. p. 26).

21. Accordingly, New York Marine only owes a duty to defend an insured if "underlying insurance" does not provide coverage for the "bodily injury" or "property damage" that is the subject of the loss, or the limits of "underlying insurance" have been exhausted. Any such obligation, however, is subject to the other provisions of the Umbrella Policy, including the Exclusions, such as the Auto Coverages exclusion quoted above. In this case, the "underlying insurance" has not been exhausted, but as discussed below, "underlying insurance" does not provide coverage for the loss.

22. Because "underlying insurance" does not provide coverage for this loss, New York Marine would owe Neches and its employee, Mr. Malveaux, a defense were it not for the Auto Coverages exclusion. (Ex. A., Exclusions, Auto Coverages, p. 29). The Auto Coverages exclusion precludes coverage for "bodily injury" or "property damage" arising out of the ownership, maintenance or use of any "auto" that is not a "covered auto" as those terms are defined in the Umbrella Policy. As discussed in more detail below, the autos owned and operated by Neches and its employee, Mr. Malveaux, are clearly "autos" but do not fall within the definition of "covered auto." Accordingly, the Auto Coverages exclusion applies to preclude coverage.

**B. The State Court Lawsuit**

23. A copy of the Plaintiff's Original Petition filed in the State Court Lawsuit is attached as Exhibit B and, without any admission of the facts alleged therein, is incorporated by reference for the purpose of determining the duty to defend.

24. The determination of whether there is any potential for a duty to defend under the Umbrella Policy begins with the allegations made by Mr. Marino in the State Court Lawsuit. In Plaintiff's Original Petition, Mr. Marino alleges that on September 18, 2025, he was driving a vehicle southbound on FM 92. (Ex. B., p. 2). He alleges that Mr. Malveaux was driving a 2019

Mack Pinnacle tractor trailer northbound in the course and scope of his employment with Neches. (Ex. B., p. 2). He further alleges that Mr. Malveaux swerved to the left into the southbound lane causing an auto accident in the southbound lane. (Ex. B., p. 2) Mr. Marino alleges that he was injured in the collision. (Ex. B, pp. 2-3). Mr. Marino further alleges that Neches was the owner of the vehicle Mr. Malveaux was operating. (Ex. B., p. 3).

25. Mr. Marino asserts causes of action for alleged negligence against Mr. Malveaux and for alleged negligence, respondeat superior and gross negligence against Neches. (Ex. B., pp. 3-4). Mr. Marino seeks monetary relief over $1,000,000. (Ex. B., p. 2).

**C. "Underlying Insurance"**

**1. Texas Mutual's WC/EL Policy**

26. Texas Mutual issued Workers' Compensation and Employer's Liability Policy No. 0002048499 (the "WC/EL Policy") to Neches. A true and correct copy of the WC/EL Policy is attached as Exhibit C and incorporated herein. The WC/EL Policy is listed on the Schedule of Underlying Insurance in the Umbrella Policy and thus is "underlying insurance" as that term is defined by the Umbrella Policy.

27. As with most such policies, the WC/EL Policy contains two coverage parts. Part One provides workers compensation insurance to Neches. The insuring agreement of Part One of the WC/EL Policy provides as follows:

> **B. We Will Pay**
>
> We will pay promptly when due the benefits required of you by the workers compensation law.

(Ex. C., p. 11).

28. The General Section of the WC/EL Policy states that "Workers Compensation Law means the workers or workmen's compensation law and occupational disease law of each state or

territory named in Item 3.A. of the Information Page." This provision incorporates such workers compensation law. (Ex. C., p. 11). Item 3.A. of the Information Page refers to Texas only. (Ex. C., p. 6).

29. In other words, Part One of the WC/EL Policy provides coverage for the workers compensation benefits Neches owes its employees for injuries sustained by such employees during the course and scope of their employment. It does not afford coverage for injuries to third-parties such as Mr. Marino.

30. Part Two of the WC/EL Policy provides Neches with Employers Liability Insurance and contains the following insuring agreement:

> **B. We Will Pay**
>
> We will pay all sums that you legally must pay as damages because of bodily injury to your employees, provided the bodily injury is covered by this Employers Liability Insurance.

(Ex. C., p. 12).

31. Like Part One, Part Two of the WC/EL Policy only affords coverage for injuries to employees of Neches. Mr. Marino does not allege that he was an employee of Neches, nor was he an employee of Neches at the time of the accident made the basis of the State Court Lawsuit.

32. The WC/EL Policy does not afford coverage for the accident or alleged injuries to Mr. Marino that are the subject of the State Court Lawsuit. The WC/EL Policy applies to injuries to employees of Neches; it does not apply to autos or Mr. Marino's alleged injuries.

**2. The CGL Coverage Part of the Package Policy**

33. New York Marine issued a Package Policy No. PK202500025327 (the "Package Policy") to Neches, which contained a CGL Coverage Part. A certified, true and correct copy of the Package Policy is attached as Exhibit D and is incorporated herein by reference. The CGL

Coverage Part is listed on the Schedule of Underlying Insurance under the Umbrella Policy and thus is "underlying insurance" as that term is defined in the Umbrella Policy.

34. The CGL Coverage Part contains the following insuring agreement:

> **SECTION I – COVERAGES**
> **COVERAGE A – BODILY INJURY AND PROPERTY DAMAGE LIABILITY**
>
> **1. Insuring Agreement**
>
> **a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. …

(Ex. D., p. 62).

35. The CGL Coverage Part contains the following applicable exclusion:

> **2. Exclusions**
>
> This insurance does not apply to:
>
> * * *
>
> **g. Aircraft, Auto or Watercraft**
>
> "Bodily injury" or "property damage" arising out of the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft owned or operated by or rented or loaned to any insured. Use includes operation and "loading or unloading".
>
> This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured, if the "occurrence" which caused the "bodily injury" or "property damage" involved the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft that is owned or operated by or rented or loaned to any insured.
>
> * * *

(Ex. D., p. 65).

36. The CGL Coverage Part contains the following Who is an Insured provision:

**SECTION II – WHO IS AN INSURED**

**1.** If you are designated in the Declarations as:

* * *

d. An organization other than a partnership, joint venture or limited liability company, you are an insured. Your "executive officers" and directors are insureds, but only with respect to their duties as your officers or directors. Your stockholders are also insureds, but only with respect to their liability as stockholders.

* * *

(Ex. D., p. 70).

**2.** Each of the following is also an insured:

a. Your "volunteer workers" only while performing duties related to the conduct of your business or your "employees", other than either your "executive officers" (if you are an organization other than a partnership, joint venture or limited liability company) or your managers (if you are a limited liability company), but only for acts within the scope of their employment by you or while performing duties related to the conduct of your business. …

(Ex. D., p. 71).

37. The Declarations page of the CGL Coverage Part lists Neches Transport, Inc. as the named insured. (Ex. D., p. 58). Thus, Neches is an insured. Plaintiff's Original Petition alleges that Mr. Malveaux was operating a tractor-trailer owned by Neches in the course and scope of his employment by Neches at the time of the accident. Accordingly, Mr. Malveaux is an insured under subparagraph 2. above.

38. Because it is alleged that Neches owned the tractor-trailer involved in the accident that is the subject of the State Court Lawsuit and that Mr. Malveaux was operating that tractor-trailer at the time of the accident, the Aircraft, Auto and Watercraft exclusion of the CGL Coverage

Part precludes coverage for the alleged injuries to Mr. Marino. Thus, the CGL Coverage Part did not apply to the tractor-trailer at the time of the accident.

**3. The Employee Benefits Liability Coverage Part of the Package Policy**

39. The Employee Benefits Liability Coverage Part (the "EBL Coverage Part") of the Package Policy is also listed on the Schedule of Underlying Insurance in the Umbrella Policy and thus constitutes "underlying insurance" as that term is defined in the Umbrella Policy. However, as the title of the coverage part implies, the EBL Coverage Part generally affords coverage for acts, errors or omissions by Neches in the "administration" of its "employee benefit program."

40. The insuring agreement of the EBL Coverage Part contains the following provision:

> b. This insurance applies to damages only if:
>
> (1) The act, error or omission, is negligently committed in the "administration" of your "employee benefit program";
>
> * * *

(Ex. D., p. 81).

41. The EBL Coverage Part adds the following definitions:

> 1. "Administration" means:
>
> a. Providing information to "employees", including their dependents and beneficiaries, with respect to eligibility for or scope of "employee benefit programs";
>
> b. Handling records in connection with the "employee benefit program"; or
>
> c. Effecting, continuing or terminating any "employee's" participation in any benefit included in the "employee benefit program".
>
> However, "administration" does not include handling payroll deductions.
>
> * * *
>
> 4. "Employee benefit program means a program providing some or all of the following benefits to "employees", whether provided through a "cafeteria plan" or otherwise:

a. [Group life, accident or health insurance to "employees"];

b. [Profit sharing, pension, or stock ownership plans to "employees"];

c. [Unemployment, social security, workers' compensation or disability];

d. [Vacation or leave of absence plans]; and

e. Any other similar benefits designated in the Schedule or added thereto by endorsement.

(Ex. D., pp. 85-86).

42. The EBL Coverage Part contains the following provision modifying the definition of "employee:"

H. For the purposes of the coverage provided by this endorsement, Definitions 5. and 18. in the **Definitions** Section are replaced by the following:

5. "Employee" means a person actively employed, formerly employed, on leave of absence or disabled or retired. "Employee" includes a "leased worker". "Employee" does not include a "temporary worker".

* * *

(Ex. D., p. 86).

43. The EBL Coverage Part contains the following applicable exclusion:

**2. Exclusions**

This insurance does not apply to:

* * *

**b. Bodily Injury, Property Damage, or Personal And Advertising Injury**

"Bodily injury", "property damage" or "personal and advertising injury".

* * *

(Ex. D., p. 82).

44. Accordingly, the EBL Coverage Part does not apply to the State Court Lawsuit. Further, Mr. Marino's alleged injuries clearly fall within Exclusion b. above. Accordingly, the EBL Coverage Part does not apply to the tractor-trailer Mr. Malveaux was operating at the time of the accident.

## VI. DUTY TO DEFEND AND DUTY TO INDEMNIFY

45. The duty to defend and the duty to indemnify are distinct and separate duties. *Trinity Universal Ins. Co. v. Cowan,* 945 S.W.2d 819, 821-22 (Tex. 1997). The duty to defend is determined based on a comparison of the allegations in the pleadings to the terms of the insurance policy, often referred to as the eight-corners rule. *American Physicians Ins. Exch. v. Garcia,* 876 S.W.2d 842, 847-48 (Tex. 1994). The duty to indemnify on the other hand is determined based upon the actual facts that give rise to liability. *D.R. Horton-Texas, Ltd. v. Markel Intern. Ins. Co.,* 300 S.W.3d 740, 744 (Tex. 2009).

46. The terms of an insurance policy are construed based upon the ordinary rules of contract construction. *American Mfrs. Mut. Ins. Co. v. Schaefer,* 124 S.W.3d 154, 157 (Tex. 2003). Courts examine the entire agreement and seek to harmonize and give effect to all provisions so that none will be meaningless. *Gilbert Texas Const., LP v. Underwriters at Lloyd's London,* 327 S.W.3d 118, 126 (Tex. 2010).

47. An insurance policy can incorporate the terms of another contract and in construing the policy, courts should give effect to language of an insurance policy incorporating the terms of another contract by reference. *In re Deepwater Horizon*, 470 S.W.3d 452, 459 (Tex. 2015). Here, coverage under the Umbrella Policy can only be ascertained by reference to the "underlying insurance" policies.

48. Although the duty to indemnify is usually not justiciable until there has been a judgment or settlement, there is an exception when there is no duty to defend and there cannot be a duty to indemnify for the same reasons there is no duty to defend. *Farmers Texas County Mut. Ins. Co. v. Griffin,* 955 S.W.2d 81, 84 (Tex. 1997). Therefore, whether there is a duty to indemnify Neches and Mr. Malveaux is justiciable despite the pendency of the State Court Lawsuit.

49. Whether there is a duty to indemnify under the Umbrella Policy is justiciable for another reason as well. Mr. Marino has made a settlement demand that would call for the payment of the limits of the Umbrella Policy, purporting to invoke the *Stowers* doctrine. A question is justiciable if there is a real controversy between the parties. *See The Honorable Barbara J. Houser v. Allianz Global Risks US Insurance Co.,* 3:23-CV-1592-S, 2026 WL 2517681 (N.D. Tex., Aug. 26, 2026) (holding that a justiciable controversy existed between a plaintiff and various excess when there was a "significant possibility" that liability would reach excess coverage, even though no demand had been made on the excess carriers). Because whether there is coverage under an insurance policy is an element of any cause of action under the *Stowers* doctrine, the question of whether there is any duty to indemnify under the Umbrella Policy will resolve an actual controversy among the parties.

50. In this case, whether there is a duty to defend under the Umbrella Policy depends upon whether the claim is covered by "underlying insurance" as that term is defined in the Umbrella Policy. Accordingly, it is necessary to look to the terms of the "underlying insurance" policies to ascertain whether they provide coverage for this automobile accident involving Mr. Marino. It is apparent from an analysis of the "underlying insurance" policies that they do not afford coverage for this accident. Because there is no coverage for the claim under "underlying insurance" and because Neches has requested coverage under the Umbrella Policy and offered to

tender the retention, there is at least the potential that a defense could be owed under the Umbrella Policy. However, the auto exclusion in the Umbrella Policy excludes coverage such that there is no duty to defend Neches or Mr. Malveaux under the Umbrella Policy.

51. The duty to indemnify is justiciable in this case because, for the same reasons there is no duty to defend Neches or Mr. Malveaux under the Umbrella Policy, there could be no duty to indemnify. No facts could change the accident in question into anything other than a truck wreck.

## VII. CAUSES OF ACTION

52. Pursuant to Federal Rule of Civil Procedure 57, New York Marine seeks declaratory judgment under 28 U.S.C. § 2201 resolving all issues in this insurance coverage dispute and declaring the parties' respective rights and obligations with respect to all matters in controversy. Among other things, New York Marine seeks declarations that:

a. "Underlying insurance" consists of the WC/EL Policy issued by Texas Mutual and the CGL Coverage Part and EBL Coverage Part of the Package Policy issued by New York Marine;

b. The WC/EL Policy does not afford coverage for the accident made the basis of the State Court Lawsuit;

c. The CGL Coverage Part of the Package Policy does not afford coverage for the accident made the basis of the State Court Lawsuit;

d. The EBL Coverage Part of the Package Policy does not afford coverage for the accident made the basis of the State Court Lawsuit;

e. Because "underlying insurance" does not provide coverage for the accident that is the subject of the State Court Lawsuit, the insuring agreement of the Umbrella Policy, which provides, in pertinent part, that New York Marine has "the right and duty to defend the insured" is potentially applicable such that the duty to defend is justiciable;

f. The Auto Coverages exclusion in the Umbrella Policy precludes any duty to defend Neches or Mr. Malveaux in the State Court Lawsuit;

g. Neither the 2019 Mack Pinnacle tractor, nor the trailer it was pulling, were a "covered auto," as that term is defined in the Umbrella Policy at the time of the accident that is the subject of the State Court Lawsuit;

h. New York Marine does not owe a duty to defend Neches or Mr. Malveaux in the State Court Lawsuit;

i. The exception to the general rule that the duty to indemnify is not justiciable prior to entry of judgment or a settlement announced in *Griffin* applies in this case;

j. For the same reasons that New York Marine owes no duty to defend Neches or Mr. Malveaux, New York Marine owes no duty to indemnify Neches or Mr. Malveaux in connection with the State Court Lawsuit;

k. The duty to indemnify is also justiciable because Mr. Marino's settlement demand purporting to invoke the *Stowers* doctrine, calls for the payment of the limits of the Umbrella Policy, presenting a real controversy between the parties.

l. New York Marine is awarded its costs as are equitable and just; and

m. Such other and further declarations as may be just and necessary to resolve all justiciable disputes between and/or among the parties.

53. New York Marine reserves the right to amend the allegations in its Complaint.

## VIII. CONCLUSION AND PRAYER

54. Plaintiff, New York Marine, prays that Defendants, Neches Transport, Inc., Deondric Chevon Malveaux and Michael Lynn Marino be cited to appear and answer in this matter and, upon final hearing and trial:

a. That New York Marine have and recover a final judgment declaring all rights and obligations between and among the parties as requested above and also as may be just and necessary to resolve all matters in dispute between and among the parties regarding this insurance coverage dispute; and

b. That New York Marine have and recover such other and further relief as may be just and necessary.

Respectfully submitted,

*/s/ David A. Clark*

**David A. Clark**
Texas Bar No. 04276390
*david.clark@akerman.com*
**Thomas Schwab**
Texas Bar No. 24118526
*thomas.schwab@akerman.com*
**AKERMAN LLP**
1300 Post Oak Blvd., Suite 2300
Houston, TX 77056
Telephone: (713) 623-0887
Facsimile: (713) 960-1527

**ATTORNEYS FOR PLAINTIFF NEW YORK MARINE AND GENERAL INSURANCE COMPANY**